IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

DECEMBER 1999 SESSION



FILED

March 10, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # W1999-01089-CCA-R3-CD |
| Appellee, | * | HENRY COUNTY |
| VS. | * | Hon. Julian P. Guinn, Judge |
| JERRY WAYMAN TRAVIS, | * | (Sale of a Schedule II Controlled Substance) |
| Appellant. | * | |

For Appellant:

Teresa McCaig Marshall
Attorney
308 W. Washington Street
Paris, TN  38242

For Appellee:

Paul G. Summers
Attorney General and Reporter

J. Ross Dyer
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN  37243

Robert "Gus" Radford
District Attorney General
Twenty-Fourth Judicial District
P.O. Box 686
Huntingdon, TN  48344

Beth Boswell and Steve Garrett
Assistant  District Attorney General
Camden, TN  38320

OPINION FILED:_____

REVERSED AND REMANDED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Jerry Wayman Travis, was found guilty of selling a Schedule II controlled substance. Tenn. Code Ann. § 39-17-417(a). The trial court imposed a Range I sentence of three years, ordered a six-month period of continuous confinement, and directed that the balance of the sentence be served in a community corrections program. A fine of $2,000 was imposed.

In this appeal of right, the defendant challenges the sufficiency of the evidence and argues that the trial court committed error as follows:

(1)     by failing to grant a motion of continuance;

(2)     by failing to provide instructions on a lesser included charge of criminal responsibility for facilitation of a felony in accordance with Tenn. Code Ann. § 39-11-403; and

(3)     by failing to find and appropriately apply mitigating circumstances.

Because the trial court committed prejudicial error by failing to instruct the jury on lesser included offenses, the conviction is reversed and the cause is remanded for a new trial.

On June 16, 1998, at about 7:00 P.M., Union City Police Lieutenant James Richard Kelly, a drug task force officer, met with Sergeant Donald Wayne Blackwell and Officer Jock Bass in an effort to purchase illegal drugs as a part of an undercover operation. Lieutenant Kelly, who was driving a Mercury Cougar equipped with a video camera, a recorder, and a wireless transmitter, drove to the Depot Hill area of Paris hoping to purchase cocaine. Initially, Lieutenant Kelly asked for a "fifty" from a group of three or four black males, which included Israel Patton, an individual he recognized from a previous transaction a day or two earlier. One of

2

the individuals refused Lieutenant Kelly's request and he continued to drive through the area. Shortly thereafter, he observed four young black males, including the defendant, walking along Irving Street. When Lieutenant Kelly asked for a "fifty," the defendant directed him to drive around the block and made hand gestures toward "someone" in the area Lieutenant Kelly had just left. Patton was about 70 to 75 yards away. When Lieutenant Kelly returned, the defendant directed him by hand motions to drive around the block a second time. As he circled back to the area, Lieutenant Kelly saw the defendant and Israel Patton standing next to each other. Patton then approached his vehicle and handed him two small rocks of cocaine. When Lieutenant Kelly asked whether this was all he had, Patton responded in the affirmative. Lieutenant Kelly handed Patton unmarked bills totaling $50.00 and left to meet Sergeant Blackwell and Officer Bass to whom he provided the video tape and the crack cocaine. He acknowledged that the defendant neither took money nor handled the drugs.

After his grand jury indictment and arrest some three weeks later, the defendant first told officers that he was out of town on the date in question. When informed that there was a video tape of the incident, the defendant acknowledged his presence at the time of the offense but claimed that all he did was introduce Lieutenant Kelly to Patton. Although he initially admitted setting up a "deal" with Patton, the defendant insisted to police that he was not a part of the transaction.

The video tape establishes that the defendant was approximately five feet from Patton during the transaction and made no comments. It did not pick up the hand gestures made by the defendant. Sergeant Blackwell, who questioned the defendant after his arrest, characterized the defendant as "the runner" and Patton as "the dealer." A video tape of the interrogation was played for the jury. After it

3

ended, Sergeant Blackwell asked the defendant other questions. He stated that the defendant claimed that "all [I] did was hook Israel up with this guy...." The crime laboratory determined that the substance purchased from Patton was 0.08 gram of cocaine base.

At trial, the defendant, who had graduated from high school only a few weeks before the drug transaction, testified as the only defense witness. He stated that he had plans to attend college on a full athletic scholarship, but that the indictment precluded admission. He claimed that he had only a casual relationship with Patton, whom he described as "a drunk" who hung out in the park where the defendant and his friends played ball. The defendant contended that just prior to the transaction, he had asked Patton to purchase some cigarettes for him. He explained that he was merely waiting on Patton to return from a 7-11 market when confronted by Lieutenant Kelly, who asked for drugs, a request the defendant claimed as "common for the area." The defendant claimed that he had no idea Patton sold drugs and denied waiting for the officer's return. The defendant contended that he did not see any crack cocaine and was unaware of the transfer of any monies between Lieutenant Kelly and Patton.

The defendant also explained that he had just been awakened when initially questioned by police and had mistakenly informed them that he had been out of town with his sister, with whom he regularly traveled to see family in Illinois. He asserted that he did not recall the Patton transaction until he read the indictment almost a month after the occurrence and saw the reference to the green vehicle driven by Lieutenant Kelly. The defendant, who conceded that he was untruthful when he told Sergeant Blackwell he was not in the area at the time Patton sold the drugs, explained that he simply did not know "what was going on" at the time the

4

transaction took place.

Initially, the defendant contends that the evidence was insufficient. He argues that the proof did not establish that he possessed either the illegal drugs or the money involved in the transaction. He submits that he was merely joking, as was common in the neighborhood, when, upon being asked for a "fifty," he suggested that Lieutenant Kelly "make the block." While admitting to hand gestures to Patton, he explained that he was merely motioning him to the area to ask him to buy cigarettes.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978). This court may not reweigh nor re-evaluate the evidence. Id. at 836. Nor may this court substitute its inferences for those drawn from the evidence by the trier of fact. Likas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the proof in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e). The scope of review after a guilty verdict by a jury is the same whether the evidence is direct, circumstantial, or a combination of both. See, e.g., State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

It is an offense, of course, for one to knowingly manufacture, deliver,

5

or sell a controlled substance. Tenn. Code Ann. § 39-17-417(a). Cocaine is classified as a Schedule II controlled substance. When the amount is less than .5 gram, the offense is a Class C felony. Tenn. Code Ann. § 39-17-417(c)(2). One may be equally responsible for the criminal conduct of another if he promotes or assists in the offense or otherwise benefits. Tenn. Code Ann. § 39-11-402.

In the light most favorable to the state, the defendant, when told by Lieutenant Kelly that he was looking for a "fifty," instructed him to "make the block" and gestured in the direction of Israel Patton. When Lieutenant Kelly returned, the defendant directed him to again "circle the block." As Lieutenant Kelly returned a second time, he saw the defendant standing near Patton. The defendant was only a short distance away when Lieutenant Kelly handed Patton $50.00 for the crack cocaine. From all of this, it was entirely appropriate for the jury to infer that the defendant acted as a "runner," whose job it was to act as a buffer and make sales contacts for Patton. As such, he would have provided substantial assistance in the commission of the crime and would share equal culpability with the principal.

(1)

The defendant argues that the trial court erred by refusing to grant a continuance. The arraignment was July 13, 1998. The defendant was not appointed counsel until two and one-half months later because of a conflict within the public defender's office. The trial was November 17, 1998. Defense counsel made a motion for a continuance on that date, complaining of difficulty in locating her client because of an incorrect address and no telephone number. At defense counsel's request, the bailbondsman contacted the defendant. The defendant, who denied having heard from his bailbondsman, offered as excuses that "I just found out my girl is pregnant with my child, and it just scares me." Defense counsel, in

6

support of the motion, stated that when she met with the defendant the morning of the trial, the defendant explained that he "had some personal difficulties that have kept [me] from keeping in touch with [you]."

The trial court made the following observation:

[T]he record should reflect ... that this man has misled this court since the very beginning. He didn't appear as he was scheduled, and it was necessary to issue a capias for him back in July. When he was finally located and arraigned, he told this court incorrectly that it was his intention to obtain counsel. He had appeared without counsel and he was given, at that time in August, until September the 21st to be present with his attorney. He didn't bother to do it then. He hasn't done it at any time since then. Finally, this court simply appointed counsel when this man refused to do what he said that he would do and set this case for trial. I was informed as late as yesterday, notwithstanding having given him an attorney, that he refused to confer with the attorney.... [H]e refused to contact her; he refused to meet with her; he refused to give her a phone number, an address; he couldn't be reached; his bondsman couldn't find him. And now he comes into court stating that he wants this matter continued. This has been nothing but a case of childish, irresponsibility in this man refusing to do what he is told, or refusing to take advantage of the opportunities he's given, and not having an excuse or even legitimate reason.

Defense counsel then stated that the defendant had actually been in her office on two occasions. Defense counsel also indicated that she met the defendant "at the courthouse when I was initially appointed," although it is unclear whether that constituted a third meeting.

The grant or denial of a continuance motion rests within the sound discretion of the trial judge. His determination will not be overturned unless there is a clear showing of abuse of that discretion. Woods v. State, 552 S.W.2d 782 (Tenn. Crim. App. 1977); Frazier v. State, 466 S.W.2d 535 (Tenn. Crim. App. 1970). When

7

there has been a lack of diligence or neglect on the part of the moving party, the motion for continuance should be overruled. State v. Jefferson, 529 S.W.2d 674 (Tenn. 1975). A reversal is warranted only when the failure to continue results in an unfair trial and a different result might reasonably have been reached had the continuance been granted. Maxwell v. State, 501 S.W.2d 577 (Tenn. Crim. App. 1973).

The record simply does not demonstrate that the trial court abused its discretion. The record is not clear on how much communication the defendant and his defense counsel had in their two meetings before the trial. Moreover, the record of the trial does not indicate how the defendant might have been prejudiced by the failure to grant a continuance. The defendant's own neglect should not be the basis for a continuance, especially when the motion for relief is not made until the date of the trial. Under these circumstances, the trial court cannot be found to have erred.

(2)

Next, the defendant argues that the trial court erred by failing to instruct a lesser included offense, criminal responsibility for facilitation of a felony. Tenn. Code Ann. § 39-11-403. The defendant argues that the trial judge had a duty under Tenn. Code Ann. § 40-18-110(a) to include in the instructions to the jury all lesser included offenses.

There is a statutory duty on the part of trial courts to charge not only the offense listed in the indictment, but also all lesser included offenses. Tenn. Code Ann. § 40-18-110. As pointed out by the state, it has traditionally been held that the failure to charge a lesser included offense denies a defendant of his constitutional right to a trial by jury if there are any facts "susceptible of inferring guilt

8

on any lesser included offense or offenses." State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981). See also McGowan v. State, 17 Tenn. 184 (1836). If, however, the record is devoid of evidence to support an inference of guilt to the lesser offense, the trial court is not required to instruct the jury on the lesser offense. State v. Vann, 976 S.W.2d 93 (Tenn. 1998); State v. Stephenson, 878 S.W.2d 530 (Tenn. 1994). In State v. Bolden, 979 S.W.2d 587 (Tenn. 1998), our supreme court acknowledged that a "purpose of the statute is to protect the right to trial by jury by instructing the jury on the elements of all offenses embraced by the indictment [and to] facilitate ... the overall truth-seeking function of the process." Id. at 593.

In Beck v. Alabama, 447 U.S. 625 (1980), the United States Supreme Court commented upon the basis of the duty to charge lesser included offenses:

> At common law, the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged. But it has long been recognized that it can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal. [P]roviding the jury with the "third option" of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard.

Id. at 633-34. Recently, in State v. Williams, 977 S.W.2d 101 (Tenn. 1998), a majority of our supreme court indicated that there was merely a statutory right to a charge on lesser included offenses rather than a constitutional right.[1]

---

[1]See State v. Staggs, 554 S.W.2d 620 (Tenn. 1977) (a part of the constitutional right to trial by jury is to have every issue made by the evidence determined by the jury under a correct and complete charge of the law); Strader v. State, 362 S.W.2d 224 (Tenn. 1962). Recent cases stating the rule that failure to charge a lesser offense is a constitutional deprivation rely on State v. Wright, 618 S.W.2d 310 (Tenn. Crim. App. 1981) (Joe D. Duncan, Judge), and include the following: State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996); State v. Howard, 926 S.W.2d 579 (Tenn. Crim. App. 1996); State v. Summerall, 926 S.W.2d 272 (Tenn. Crim. App. 1995); State v. Ruane, 912 S.W.2d 766 (Tenn. Crim. App. 1995); State v. Lewis, 919 S.W.2d 62 (Tenn. Crim. App. 1995); State v. Boyce, 920 S.W.2d 224 (Tenn. Crim. App. 1995); State v. King, 905 S.W.2d 207 (Tenn. Crim. App. 1995); State v. McKnight, 900 S.W.2d 36 (Tenn. Crim. App. 1994); State v. Vance, 888 S.W.2d 776 (Tenn. Crim. App. 1994); State v. Banes, 874 S.W.2d 73 (Tenn. Crim. App. 1993); State v. Richard Darrell Miller

9

In State v. Lewis, 919 S.W.2d 62 (Tenn. Crim. App. 1995), this court ruled that "virtually every time one is charged with a felony by way of criminal responsibility for the conduct of another, facilitation of a felony would be a lesser included offense." Id. at 67. The panel concluded that "criminal responsibility for facilitation is a lesser degree than that for criminal responsibility for the crime itself based on the conduct of another." Id. at 68. Because there was evidence upon which the jury could have convicted Lewis of facilitation, his conviction was reversed and Lewis was granted a new trial. In State v. Langford, 994 S.W.2d 126 (Tenn. 1999), our supreme court again touched on the subject, holding that "a trial court must instruct the jury on all lesser included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense." Id. at 128.

Recently, in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme court revised the standards for the determination of lesser included offenses. The court noted that a companion case, State v. Dominy, 6 S.W.3d 472 (Tenn. 1999), overruled language in State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), which recognized a distinction between lesser grades or classes of offenses and lesser included offenses. The court also adopted a modified version of the model penal code in order to determine what constitutes a lesser included offense:

_____

and Johnny Wayne Garner, C.C.A. No. 01C01-9703-CC-00087 (Tenn. Crim. App., at Nashville, Sept. 11, 1998); State v. George Rose, C.C.A. No. 02C01-9710-CR-00405 (Tenn. Crim. App., at Jackson, July 2, 1998); State v. Harvey Phillip Hester, C.C.A. No. 03C01-9704-CR-00144 (Tenn. Crim. App., at Knoxville, June 4, 1998); State v. Becky Davis, C.C.A. No. 03C01-9701-CR-00027 (Tenn. Crim. App., at Knoxville, May 1, 1998); State v. Willie D. Graham, C.C.A. No. 03C01-9707-CC-00314 (Tenn. Crim. App., at Knoxville, May 7, 1998); State v. Warren Tyrone Fowler, C.C.A. No. 03C01-9709-CC-00391 (Tenn. Crim. App., at Knoxville, Apr. 29, 1998); State v. Harvey D'Hati Moore, C.C.A. No. 03C01-9704-CR-00131 (Tenn. Crim. App., at Knoxville, Mar. 18, 1998); State v. Daniel Joe Brown, C.C.A. No. 02C01-9611-CC-00385 (Tenn. Crim. App., at Jackson, Dec. 3, 1997); State v. Michael Tyrone Gordon, C.C.A. No. 01C01-9605-CR-00213 (Tenn. Crim. App., at Nashville, Sept. 18, 1997); State v. George Brooks, C.C.A. No. 02C01-9602-CR-00050 (Tenn. Crim. App., at Jackson, May 15, 1997); State v. Janice Hansbrough-Eason, C.C.A. No. 02C01-9504-CR-00098 (Tenn. Crim. App., at Jackson, Dec. 19, 1996); State v. Hollis Ray Williams, C.C.A. No. 03C01-9406-CR-00209 (Tenn. Crim. App., at Knoxville, July 23, 1996); State v. Randall Scott, C.C.A. No. 01C01-9307-CR-00240 (Tenn. Crim. App., at Nashville, Jan. 5, 1996); State v. Deborah Gladish, C.C.A. No. 02C01-9404-CC-00070 (Tenn. Crim. App., at Jackson, Nov. 21, 1995); State v. Eric J. Fair, C.C.A. No. 02C01-9403-CR-00055 (Tenn. Crim. App., at Jackson, Nov. 15, 1995).

An offense is a lesser included offense if:

(a)    all of its statutory elements are included within the statutory elements of the offense charged; or

(b)    it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

    (1)    a different mental state indicating a lesser kind of culpability; and/or

    (2)    a less serious harm or risk of harm to the same person, property or public interest; or

(c)    it consists of

    (1)    facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

    (2)    an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or

    (3)    solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67.

There is a two-step process in determining whether the evidence justifies a jury instruction on a lesser included offense:

First the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser included offense. In making this determination, the trial court <u>must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence</u>. Second, the trial court must determine if the evidence, viewed in this light, is <u>legally sufficient</u> to support a conviction for the lesser-included offense.

Id. at 469.

Facilitation of a felony is, of course, "an offense of the class next below

11

the felony facilitated by the person so charged." Tenn. Code Ann. § 39-11-403(b). As defined by Tenn. Code Ann. § 39-11-403, facilitation is a lesser included offense under parts (a) and (c) of the Burns test. The evidence here, in our view, would have been sufficient to have supported a conviction of the facilitation of selling a Schedule II controlled substance.

One may be criminally responsible for facilitation of a felony "if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of a felony." Tenn. Code Ann. § 39-11-403(a). As indicated by the Sentencing Commission Comments, this is a theory of "vicarious responsibility." It applies to one who facilitates a crime by providing substantial assistance to the perpetrator, but who lacks the intent to promote or assist in the felony or otherwise benefit. If one promotes or assists in the commission of the offense or otherwise benefits, the crime is one of criminal responsibility which results in a culpability of equal status to the perpetrator. Tenn. Code Ann. § 39-11-402.

Here, the trial court charged criminal responsibility for the conduct of another but chose not to charge criminal responsibility for facilitation of a felony. In the light most favorable to the defendant, as is required in the Burns analysis, Lieutenant Kelly had initially asked a group, including Patton, for a "fifty." He left that group, drove a short distance, and then made the same request of the defendant. It is one of the positions of the defendant that Patton, who sold the drugs, was acting in response to Lieutenant Kelly's initial request to purchase drugs. Patton had actually met Lieutenant Kelly one or two nights before during a similar transaction. In that instance, Lieutenant Kelly also sought a "fifty." The defendant

12

claimed that he made no mention to Patton of Lieutenant Kelly's interest in illegal drugs and did not suspect a possible drug deal. That may be hard to believe but it was clearly a factual issue for the jury which has the duty of determining the credibility of witnesses. While initially claiming an alibi, the defendant ultimately acknowledged his presence to police but argued that the extent of his involvement was to "hook Israel [Patton] up with this guy and nothing more," something which, in our assessment, is less than full participation in the crime, but does not qualify as an innocent bystander. The central questions, of course, are whether the defendant was in fact a "drug runner," aiding or promoting the offense; an unpaid, casual accommodator of an illegal drug deal; or merely an innocent bystander as he waited on Patton for a cigarette purchase. While the jury obviously rejected the claim of innocence, the circumstances would warrant a possible third alternative. That is, something other than an "all or nothing" charge. A jury might, for example, infer that the defendant furnished some casual assistance to Patton or even solicited his participation without benefitting in any proceeds. The circumstantial evidence would have supported that conclusion had the jury so inferred.

It was also error for the trial court not to instruct the jury on the offense of solicitation.[2]  That offense is defined by Tenn. Code Ann. § 39-12-102(a):

> Whoever, by means of oral, written or electronic
> communication, directly or through another, intentionally
> commands, requests or hires another to commit a
> criminal offense, or attempts to command, request or hire
> another to commit a criminal offense, with the intent that
> the criminal offense be committed, is guilty of solicitation.

Solicitation is a lesser included offense under at least part (c) of the test enunciated in Burns. There was evidence that the defendant requested Patton to sell illegal

---

[2]While one may be guilty of solicitation whether the crime does or does not occur, one may not be convicted of both the solicitation and the completed offense. Sentencing Commission Comments.

drugs to Lieutenant Kelly. Whether the proof is sufficient to support the offense charged in the indictment does not affect the trial court's duty to instruct on lesser offenses if the evidence also supports a finding of guilt on lesser offenses. The jury must perform the function of fact-finding:

> A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an "all or nothing" choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence.

State v. Bolton, 979 S.W.2d at 593 (quoting People v. Barton, 906 P.2d 531, 536 (Cal. 1995)). The facts here, in our view, would also have warranted a charge of solicitation, an inchoate crime which would result in a lesser punishment. "Solicitation is an offense two (2) classifications lower than the most serious offense solicited, unless the offense solicited was a Class B or C misdemeanor, in which case the solicitation would not be an offense." Tenn. Code Ann. § 39-12-107(b).

The proof was strong that the defendant participated in some way. Nevertheless, because the evidence would have supported either the charge in the indictment or a conviction for facilitation or solicitation, this court cannot classify the error as harmless under either the constitutional or the statutory standard. There was an obvious disparity in the degree of participation in the crime as between Patton and the defendant.

(3)

Next, the defendant claims that the trial court imposed an excessive jail term because it failed to consider and apply mitigating factors under Tenn. Code

14

Ann. § 40-35-113. More specifically, the defendant argues that he played a minor role in the commission of the crime, Tenn. Code Ann. § 40-35-113(4), and that because of his youth, he lacked substantial judgment in committing the offense. Tenn. Code Ann. § 40-35-113(6). The state disagrees.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

The trial court rejected the defendant's claim that his role was minor, finding instead that the defendant arranged the transaction. The evidence does not, in our view, preponderate against that finding. Moreover, the trial court acted within its prerogative when it rejected the defendant's claim that because he was not a strong student, he lacked substantial judgment. Even though the defendant was only a senior in high school at the time, his language indicated a familiarity with drug transactions and a degree of street savvy. In summary, the evidence would not preponderate against the trial court's conclusion that the defendant did, in fact, fully appreciate the degree of his involvement in the offense. Thus, there was no error in this regard.

Because the trial court should have charged the lesser included offenses of facilitation of a felony and solicitation, the judgment must be reversed. A new trial is warranted and the trial judge must assess from the evidence presented in that proceeding whether there are facts "susceptible of inferring guilt on any lesser included offense or offenses." Wright, 618 S.W.2d at 315. The case is, therefore, remanded to the trial court for a new trial.

 

                    _____
                    Gary R. Wade, Presiding Judge

CONCUR:


_____
John Everett Williams, Judge


_____
Norma McGee Ogle, Judge