IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

November 16, 1998

Cecil W. Crowson
Appellate Court Clerk

FOR PUBLICATION

Filed: November 16, 1998

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | DYER CRIMINAL |
| Vs. | ) | |
| | ) | |
| STEVEN BOLDEN, | ) | HON. JOE G. RILEY, JUDGE |
| | ) | |
| | ) | |
| Appellant. | ) | No. 02-S-01-9711-CC-00102 |
| | ) | |

**For Appellant:**
Vanedda Prince
FOWLER, PRINCE & WEBB
Union City, Tennessee

**For Appellee:**
John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Kathy Morante
Deputy Attorney General

Kenneth W. Rucker
Assistant Attorney General
Nashville, Tennessee

At Trial:
C. Phillip Bivens
District Attorney General
Dyersburg, Tennessee

# O P I N I O N

COURT OF CRIMINAL APPEALS
AFFIRMED

ANDERSON, C.J.

We granted this appeal to determine two issues: first, whether a co-defendant's testimony pursuant to a plea agreement with the prosecution violated the defendant's rights to due process of law and a fair trial under the United States and Tennessee Constitutions; and second, whether the trial court erred in charging the jury to consider the lesser included offense of second degree murder over the defendant's objection.

In affirming the defendant's conviction for second degree murder, the Court of Criminal Appeals held that the co-defendant's testimony did not violate the defendant's constitutional rights because the plea agreement was disclosed, and the defendant had the opportunity to cross-examine the co-defendant. The appellate court also concluded that since the evidence supported a conviction for second degree murder, the trial court was required by statute to charge the jury on that offense.

We agree with the Court of Criminal Appeals' conclusion that the co-defendant's plea agreement did not violate the defendant's rights to due process and a fair trial. The plea agreement was disclosed to the defendant and to the jury, and the defendant fully cross-examined the co-defendant with respect to his motives in entering into the agreement. We also agree with the Court of Criminal Appeals that the trial judge had a statutory duty to instruct the jury on second degree murder. Thus, we affirm the Court of Criminal Appeals' judgment.

## BACKGROUND

Kabrian Hayes and the defendant, Steven Bolden, were charged with the first degree premeditated murder of Sammy Davidson. Hayes made a plea agreement with the prosecution in which he agreed to plead guilty to second degree murder and receive a 25-year sentence in exchange for his testimony against Bolden. At Bolden's trial, however, Hayes testified that he did not recall the events that occurred on the night of the murder. Upon further questioning, he claimed only that unknown persons gave him rides to and from the murder scene.

During a recess in the trial, further discussion took place between Hayes, Hayes' mother, defense counsel, and the prosecution. A second plea agreement was made by which Hayes would plead guilty to second degree murder and allow the trial court to determine the sentence from the range of 15 to 25 years. In return, Hayes agreed to testify truthfully, in accordance with a prior statement he had given to a law enforcement officer, and as to threats made to him by Bolden. The written agreement stated:

> If Kabrian Hayes testifies truthfully as to Steve Bolden's involvement in the murder of Sammy Davidson and as he stated in his statement to [TBI agent] Roger Hughes on 3/21/94 at 6:05 p.m. and as to threats made to him by Steve Bolden then I will offer a plea to 2d Degree Murder, Range I, judicial sentencing.

After the recess, the trial resumed. Hayes then testified that on March 16, 1994, he and Bolden drove around Tiptonville, Tennessee, searching for the victim Davidson for the purpose of collecting forty dollars ($40) which he owed Bolden for two rocks of cocaine. Bolden was driving, and Hayes rode in the front passenger seat. Hayes and Bolden found the victim, who was ordered by Bolden to get into the car. Bolden drove to a remote, unpopulated area near the Mississippi River where he asked the victim to pay him the forty dollars ($40). When the victim indicated that he did not have any money, Bolden told Hayes to shoot the victim. Hayes, armed with a 9-mm. pistol given to him by Bolden, shot the victim twice in the chest at point blank range. Bolden and Hayes then threw the victim's body in the river.[1]

Hayes' testimony was corroborated with other evidence. Terrance Montgomery testified that he saw Hayes and Bolden together on the evening of the murder. Bolden told Montgomery that they were looking for the victim, who "had messed [Bolden] out of forty dollars." Bolden expressed his intent to kill the victim to Montgomery, who also noticed that Hayes was in possession of a 9 mm. pistol.

---

[1] Hayes was extensively cross-examined about the change in his testimony and the timing of the more favorable plea agreement. Hayes maintained that he shot the victim because he was afraid of Bolden. Hayes stated that he had received letters from Bolden asking Hayes to commit perjury, and threatening to harm him if Hayes testified truthfully.

Bolden gave two statements to the police. After first denying that he was in the car when the victim was shot, Bolden admitted that he was in the car when Kabrian Hayes shot and killed the victim.

At the conclusion of trial, defendant Bolden objected to a proposed jury instruction on the lesser included offense of second degree murder seeking to limit the jury's consideration to first degree murder. Despite the objection, the trial court charged the jury on first degree premeditated murder and the lesser included offense of second degree murder. The jury convicted Bolden of second degree murder.

On appeal, the Court of Criminal Appeals affirmed defendant's conviction, holding that the co-defendant's plea bargain did not violate Bolden's right to due process because the jury was aware of the agreement and the defendant was permitted to conduct a thorough cross-examination of the co-defendant. The appellate court also held that the trial court had a statutory duty to charge the jury with all lesser grades or classes of first degree murder supported by the evidence and did not err by instructing the jury on second degree murder.

We granted this appeal to review two questions: first, whether the co-defendant Hayes' plea agreement violated defendant's rights to due process and a fair trial; and second, whether the trial court erred in charging the jury on the lesser included offense of second degree murder over the defendant's objection.

## CO-DEFENDANT'S PLEA BARGAIN

Bolden argues that he was denied his right to due process and a fair trial under the Tennessee and United States Constitutions because the prosecutor's plea agreement with Kabrian Hayes required Hayes to testify to specific facts. Specifically, Bolden contends that requiring Hayes to testify "as he stated in his statements to [TBI agent] Roger Hughes" was tantamount to requiring scripted testimony. The State

maintains that the agreement required truthful testimony and that disclosure of the agreement to the jury and cross-examination of Hayes preserved the defendant's right to due process and a fair trial.

We begin by observing that the testimony of an accomplice is generally admissible even if it is obtained through a plea agreement. See Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). A promise of leniency or other favorable agreement goes only to the credibility of a witness's testimony, not to its admissibility. United States v. Hoffa, 385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966); see also State v. Garcia, 630 P.2d 665, 673 (Idaho 1981); Kelley v. State, 460 N.E.2d 137, 140 (Ind. 1984); State v. Burchett, 399 N.W.2d 258, 266 (Neb. 1987).

Many courts, however, require that safeguards be followed before admitting testimony procured through plea bargain agreements. These requirements, the purpose of which is to preserve the defendant's rights to due process and a fair trial, have been held to include the following: (1) full disclosure of the terms of the agreements struck with the witnesses; (2) the opportunity for full cross-examination of those witnesses concerning the agreements and the effect of those agreements on the testimony of the witnesses; and (3) instructions cautioning the jury to carefully evaluate the weight and credibility of the testimony of such witnesses who have been induced by agreements with the State to testify against the defendant. See, e.g., Garcia, 630 P.2d at 673; People v. Lopez, 610 N.E.2d 189 (Ill. Ct. App. 1993); Caldwell v. State, 583 N.E.2d 122 (Ind. 1991); Sheriff, Humboldt County v. Acuna, 819 P.2d 197 (Nev. 1991); State v. Leonard, 328 S.E.2d 593 (N.C. Ct. App. 1985); State v. Nerison, 401 N.W.2d 1 (Wis. 1987).

As the Iowa Supreme Court has explained:

> In most instances, any potential for prejudice to a defendant's case will be avoided by allowing the witness to testify subject to searching cross-examination intended to develop fully any evidence of bias or

-5-

motive on the part of the witness, or improper conduct on the part of the State. Every fact that might in some way influence the truthfulness and credibility of the witness's testimony should be laid before the jury. This ensures no unnecessary barriers will be imposed on the State's ability to bargain for truthful testimony, and at the same time ensures the jury will be able to determine what weight, if any, in light of all the evidence, to give the witness's testimony.

State v. McGonigle, 401 N.W.2d 39, 42 (Iowa 1987) (citation omitted).

In addition to these safeguards, courts in Nebraska, Nevada, and California have emphasized that a plea bargain may not be conditioned on a witness giving false or scripted testimony. Burchett, 399 N.W.2d at 266; Acuna, 819 P.2d at 201. The California Supreme Court has stated, for instance, that a plea bargain consummated in exchange for testimony is unacceptable where "the testimony must be confined to a predetermined formulation" or must produce a "given result, that is to say, a conviction." People v. Garrison, 765 P.2d 419 (Cal. 1989); see also State v. DeWitt, 286 N.W.2d 379, 384 (Iowa 1979) (plea agreement for accomplice's false or specific testimony is inadmissible).

Although we have not addressed this precise issue in the past, we agree with the principles espoused by the majority of other state courts and find that these principles are consistent with our Tennessee cases addressing related issues. For example, the safeguards attendant to allowing testimony induced by a plea agreement -- full disclosure of the terms of the plea agreement and cross-examination into the witness' motives and bias -- place the responsibility of weighing the testimony and credibility of the witness upon the jury. E.g., State v. Hornsby, 858 S.W.2d 892 (Tenn. 1993) (weighing evidence and credibility is function for trier of fact).

Moreover, the limitations expressed in these cases -- that a plea agreement may not be conditioned upon false, scripted, predetermined, or specific testimony without regard for the truthfulness of the witness' testimony -- are consistent with established principles of due process which prohibit the State from using testimony known to be

false or later learned to be false. <u>Giglio</u>, 405 U.S. at 154, 92 S. Ct. at 766; <u>State v. Spurlock</u>, 872 S.W.2d 602, 621 (Tenn. Crim. App. 1993).

In applying these principles to the case at hand, it is readily apparent that the requisite safeguards were followed in allowing Hayes to testify. The plea agreement, which was written on a single legal page, was disclosed to the defendant and to the jury. Counsel for defendant Bolden had ample opportunity to cross-examine Kabrian Hayes, and in fact conducted a vigorous examination into Hayes' motives and conduct. Bolden's counsel, for instance, elicited (a) the details of the first plea agreement; (b) Hayes' first statement of the offense, which did not implicate Bolden; (c) the details of the second plea agreement; and (d) the fact that Hayes' testimony implicated Bolden only <u>after</u> Hayes agreed to the second plea agreement with its possibility of a more lenient sentence. Finally, the jury was instructed that it was required to judge the credibility or believability of witnesses and to weigh their testimony.[2]

A somewhat more difficult issue, and the issue to which defendant Bolden devotes much of his argument, is whether the second plea agreement required Hayes to testify in a particular manner or according to a predetermined script. As Bolden notes, the plea agreement stated that the plea offer would be made by the prosecutor "if" Hayes testified "as he stated in his statement to [agent] Hughes on 3/24/94 at 6:05 p.m. and as to threats made to him by Steve Bolden." The agreement also stated, however, that Kabrian Hayes was to "testif[y] truthfully as to Steve Bolden's involvement in the murder of Sammy Davidson."

---

[2] The instruction stated: "As jurors, you have the responsibility of judging the credibility or believability of the witnesses and weighing their testimony. If there are conflicts, you should try to reconcile them. Do not hastily conclude that a witness testified falsely since the law allows you to presume that witnesses are truthful. In determining the credibility or believability of a witness, you may consider the witness's appearance, demeanor, motive, interest or lack of interest in the trial's outcome, general character, reputation for truth, fairness or bias, means of knowledge, reasonableness of the testimony, material contradictory statements as well as all the other evidence which tends to corroborate or to contradict the witness. . . ."

Several state courts have concluded that requiring specific testimony of a co-defendant as a condition of a plea agreement is not a violation of due process so long as the testimony is required to be truthful. In a 1987 Nebraska case, Burchett, 399 N.W.2d 258, the defendant argued that his right to a fair trial was violated because a co-defendant testified under a plea bargain agreement which required that he testify to "his last version of the events" leading to the victim's death and to the satisfaction of the prosecutor before receiving the benefit of the agreement.

The Nebraska Supreme Court began its analysis by stating that "it is only where the prosecution has bargained for false or specific testimony, or a specific result, that an accomplice's testimony is so tainted as to require . . . preclusion." The court then observed that the plea agreement required the co-defendant to assist the prosecution by "speaking truthfully with a representative of the [state] and testifying truthfully at any court hearing" regarding the events of the murder. Although the record indicated that the co-defendant had given several different statements, the court said that the "final version" implicating the defendant was understood to be truthful. Id. at 266-67.

A Washington appellate court also rejected the claim that a co-defendant's plea agreement violated the defendant's right to due process by requiring specific testimony. The court noted the plea agreement required the co-defendant to "give 'a complete and truthful' statement concerning [the victim's] death, confirming that he did not have prior knowledge of the killing, did not commit the murder, and did not aid in the commission of the murder." State v. Clark, 743 P.2d 822, 828 (Wash. Ct. App. 1987) (emphasis in original). The court concluded as follows:

> Under the terms of the immunity agreement, the State's promises did not extend to false or misleading statements or perjury. Thus, while the agreement provided some incentive for [co-defendant] to confirm his prior accounts of the killing, it provided an equal incentive that he not enter the agreement at all unless the statement was in fact the truth. . . . [W]e conclude that the immunity agreement in the instant case was not improperly conditioned on testimony setting forth a particular formulation of the facts or on the achievement of a certain result.

<u>Clark</u>, 743 P.2d at 828-29 (emphasis added).

> [I]t is not improper for the State to require the promisee to testify in a general manner that is consistent with the information provided to the State as an inducement for the bargain, subject, of course, to any change mandated by truth if the promisee subsequently admits to falsifying the information upon which the bargain is based. . . . <u>The testimony condemned by the courts . . . is that which must be played according to a predetermined script and irrespective of its truthfulness</u>. The witness must understand that he is not free to commit perjury, and that the plea bargain may not be based upon false testimony.

<u>Acuna</u>, 819 P.2d at 201 (emphasis added); <u>see</u> <u>also</u> <u>DeWitt</u>, 286 N.W.2d at 386 (co-defendant required to testify "fully about [his] knowledge of all of the facts . . . do so and truthfully").[3]

In our view, the present case is consistent with these cases. There is no indication that the prosecution's agreement with Kabrian Hayes required false or perjured testimony, nor that Hayes was required to testify in accordance with a particular script. Although the references to Hayes' prior statement to Agent Hughes and the threats made by Bolden appear to refer to improper specific testimony, the first provision in the plea agreement stated that Hayes must "testify truthfully," a condition which necessarily engulfed the other provisions. In sum, the agreement hinged upon truthful testimony. Accordingly, we are convinced that Hayes' testimony was not tainted by the plea agreement. Moreover, the essential safeguards were followed: the jury and the defendant were fully apprised of the agreement; the defendant conducted a full and

---

[3] These cases are easily distinguished from the few cases in which a violation of due process has been found. In <u>People v. Medina</u>, 41 Cal. App. 3d 438, 455, 116 Cal. Rptr. 133, 141 (Cal. Ct. App. 1974), for example, the effect of the plea agreement was to place an accomplice under a "strong compulsion" to testify against the defendant in a particular fashion that amounted to scripted testimony. Similarly, in <u>People v. Green</u>, 228 P.2d 867, 868-72 (Cal. Ct. App. 1951), the agreement was conditioned upon the accomplice's testimony producing a specific result. Finally, in <u>Franklin v. State</u>, 577 P.2d 860 (Nev. 1978), the court reversed a conviction after finding that a co-defendant's testimony violated the defendant's right to due process and holding that the prosecution's withholding of the benefits of an agreement until after an accomplice testifies is inconsistent with the search for truth. The Nevada Supreme Court, however, has since overruled <u>Franklin</u>. <u>See</u> <u>Acuna</u>, 819 P.2d at 201.

vigorous cross-examination of Hayes, which revealed that Hayes had received a new and more limited plea agreement and then changed his story on the stand; and the jury was instructed that its function was to weigh the testimony and determine the credibility of the witness. Therefore, we conclude that the admission of Hayes' testimony induced by a plea agreement did not violate the defendant's rights to due process and a fair trial.

## LESSER INCLUDED OFFENSES

Over Bolden's objection, the trial court charged the jury on the lesser included offense of second degree murder pursuant to Tenn. Code Ann. § 40-18-110(a) (1997), which provides: "It is the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Bolden argues that this statute is intended to benefit the accused and that the accused may, therefore, object to the trial court instructions on lesser offenses. The State maintains, and the Court of Criminal Appeals held, that the instruction to the jury was mandatory since the evidence was sufficient to support a charge on second degree murder.

This Court has interpreted Tenn Code Ann. § 40-18-110(a) to mean that a trial court must instruct the jury on all lesser offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense. State v. Cleveland, 959 S.W.2d 548, 553 (Tenn. 1997). An offense is lesser included in another "only if the elements of the greater offense, as those elements are set forth in the indictment, include but are not congruent with, all the elements of the lesser." Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979); see also Cleveland, 959 S.W.2d at 553.

We have frequently held that the trial court's obligation under this statute is mandatory, provided there is sufficient evidence for a rational trier of fact to find a defendant guilty of a lesser offense. Strader v. State, 362 S.W.2d 224, 228 (Tenn. 1962). The failure to instruct on a lesser offense, however, may be shown to be harmless beyond a reasonable doubt under some circumstances. State v. Williams, ___ S.W.2d ____ (Tenn. 1998) (failure to instruct on voluntary manslaughter harmless error where jury convicted defendant of first degree murder despite being instructed on other lesser included offenses).

One purpose of the statute is to protect the right to trial by jury by instructing the jury on the elements of all offenses embraced by the indictment. Although it often benefits the defendant to have a jury consider lesser offenses, the mandatory nature of the statute indicates that it facilitates the overall truth-seeking function of the process. In addressing a similar issue, the California Supreme Court observed:

> [T]he evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged. A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an 'all or nothing' choice between conviction of the crime charged or complete acquital, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence.

People v. Barton, 906 P.2d 531, 536 (Cal. 1995) (trial court properly instructed jury on lesser offense of involuntary manslaughter over the defendant's objection).

In view of the foregoing, the only remaining argument and the only question for review is whether the evidence was sufficient to sustain a conviction for the lesser included offense of second degree murder. Here, defendant Bolden was charged with the offense of first degree murder, which is "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(1) (1997 & Supp. 1998). Second degree

murder, which requires "[a] knowing killing of another," Tenn. Code Ann. § 39-13-210(1) (1997), is a lesser included offense. At trial, Bolden's guilt was predicated on his criminal responsibility for the conduct of Hayes. A person is criminally responsible for the conduct of another when the person "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, . . . solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (1997).

The jury was presented with evidence that Bolden and Hayes drove around looking for the victim, who owed Bolden money. Bolden had expressed his intent to kill the victim. He and Hayes, after finding the victim, drove to a deserted dirt road on the banks of the Mississippi. When the victim said he did not have any money, Bolden ordered Hayes to shoot the victim with a weapon Bolden had given Hayes. After Hayes shot the victim twice in the chest, Bolden helped dump the victim's body into the water.

We agree with the lower courts' determinations that there was sufficient evidence presented to warrant a conviction of second degree murder. Accordingly, we conclude that the trial court did not err in complying with its mandatory statutory obligation of instructing the jury on the offense.

### CONCLUSION

After our review of the record and the applicable authority, we conclude that the admission of the co-defendant's testimony induced by a plea agreement did not violate the defendant's rights to due process and a fair trial under the United States and Tennessee Constitutions. We further conclude that the trial court did not err in instructing the jury on the lesser included offense of second degree murder over the defendant's objection. Accordingly, we affirm the Court of Criminal Appeals' judgment.

Costs of appeal are taxed to the appellant, Steven Bolden, for which execution may issue if necessary.

-13-

_____
RILEY ANDERSON, CHIEF JUSTICE

**CONCUR:**

Drowota, Birch, and Holder, JJ.