IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

**STATE OF TENNESSEE v. JUMBO KURI**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-D-2767     Walter Kurtz, Judge**

---

**No. M1999-00638-CCA-R3-CD - Decided May 25, 2000**

---

Defendant Jumbo Kuri was convicted by a jury in the Davidson County Criminal Court of one count of reckless homicide and one count of aggravated assault. After a sentencing hearing, the trial court sentenced Defendant as a Range I standard offender to consecutive terms of four years for reckless homicide and two years for aggravated assault. Defendant raises the following issues in this appeal: (1) whether the trial court erred when it failed to instruct the jury on the lesser-included offense of criminally negligent homicide; (2) whether the trial court imposed an excessive sentence for the reckless homicide conviction; and (3) whether the trial court erred when it imposed consecutive sentencing. The judgment of the trial court is affirmed in part and reversed in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part and Reversed in Part**

WOODALL, J., delivered the opinion of the court, in which WADE, P. J. and WITT, J. joined.

Karl Dean, District Public Defender, Jeffrey A. DeVasher, Assistant Public Defender, Collins Hooper, Assistant Public Defender, and Richard Tennent, Assistant Public Defender, Nashville, Tennessee, for the appellant, Jumbo Kuri.

Paul G. Summers, Attorney General and Reporter, Elizabeth T. Ryan, Assistant Attorney General, Victor S. Johnson, III, District Attorney General, Dan Hamm, Assistant District Attorney General, and Katie Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. FACTS**

Charles Onofua testified that he and his friends Ganza Rwango and Nebiu Messay held a party at a Davidson County Quality Inn on September 13, 1997, in celebration of the Ethiopian New Year. After the party started at approximately 9:00 p.m., Onofua and Rwango worked at the door to collect admission from those attending the party.

Onofua testified that Defendant arrived at the party at approximately 10:30 p.m., along with Beniam Tekey and another individual. Although the price of admission was posted by the door, the group inquired about the price of admission and also asked why the party was not free. When Rwango replied that most things cost money, one of the individuals paid the admission price for the group. Shortly thereafter, someone complained to Onofua that Tekey was smoking, and Onofua approached Tekey and asked him not to smoke. Onofua then returned to the door.

Onofua testified that after he returned to the door, Defendant began calling for him to return to the party room. Onofua then told Rwango that he did not want to talk to Defendant because the matter had already been settled. At this point, Rwango approached Defendant and Defendant said that Onofua had accused Defendant's friend of smoking. Onofua then approached Defendant and stated that he had not accused Defendant's friend of smoking, but had merely been told that the friend was smoking. In response, Defendant became angry and he grabbed Onofua's sleeve. Onofua then felt something on his hand and when he looked at his hand he saw blood. Onofua told Rwango that he had been stabbed, and Rwango and Messay escorted Defendant out of the party.

Onofua testified that he and some other individuals followed Defendant outside. When he got outside, Onofua saw Defendant shove Rwango and saw Rwango shove Defendant against a wall. Onofua also saw Rwango and Messay "toss" Defendant "between each other." Rwango then yelled that he had been stabbed, and Onofua saw blood on Rwango's chest. At this point, Defendant grabbed his key from the ground and started running. Defendant then drove away in his car. Onofua admitted that although it appeared that Defendant had a pocket knife attached to his key chain, he was not able to look closely enough to determine that it actually was a knife.

Atsede Mehari testified that she assisted Rwango in taking admission at the door of the party. Mehari observed that when Defendant came to the door with Tekey and the other individual, the group became angry about having to pay admission and the men cursed at Rwango and threw their money at him.

Nebiu Messay testified that while he was making preparations for the music at the party, he was told that Onofua had been stabbed by Defendant. Messay then asked Defendant to go outside, and Defendant accompanied him to the door. Messay and Defendant were followed by Onofua and Rwango.

Messay testified that when they got to the door, Defendant indicated that he did not want to leave and he started pushing Rwango. Rwango then pushed Defendant out the door, Rwango and Defendant pushed each other, and Defendant fell to the ground. Messay observed that when Defendant fell down, a key fell out of his pocket. Messay then saw Defendant pick up his key and punch Rwango in the chest. Although Messay saw something in Defendant's hand that was silver and flashed, he could not tell whether it was a knife. However, Messay did see the silver object hit Rwango in the chest and he saw a lot of blood come out of Rwango's chest immediately thereafter.

Officer Arthur Messmer testified that on September 13, 1997, he was dispatched to Defendant's apartment. Messmer located Defendant at the apartment and arrested him without incident. When Messmer searched Defendant pursuant to arrest, he did not discover any weapons or keys on Defendant's person.

Detective Mahelia Sloan testified that shortly after Defendant was arrested, he gave his consent to a search of his vehicle and residence. Sloan did not find any weapons in Defendant's vehicle or residence.

Detective Sloan testified that Defendant acknowledged that he had been at the party. Defendant told Sloan that while he was at the party, two Nigerian men approached him and his friends and asked one of his friends not to smoke. Defendant stated that an argument ensued, and one of the Nigerians grabbed him by the shirt and hit him in the head. Defendant stated that he put up his arms to defend himself, but he was punched again and he fell down. Defendant also told Sloan that he then went outside and he was followed by the Nigerians. Defendant stated that he then ran to his car and drove away. Defendant denied having a knife and he claimed that one of the Nigerians had a knife. Defendant stated that the only things he had in his hands were his keys.

Dr. John Gerber testified that he performed an autopsy on the body of Rwango on September 15, 1997. Dr. Gerber determined that the cause of death was a stab wound to the right upper chest. Dr. Gerber noted that the stab wound was six and one quarter inches long. Although Dr. Gerber could not determine with complete certainty what kind of weapon caused the wound to Rwango's chest, he believed that the wound was consistent with a sharp blade.

Dr. Gerber testified during cross-examination that the wound was deep at the entry point, but it "gradually taper[ed] off to nothing more than superficial tissue." Dr. Gerber also testified that although it was unlikely, it was possible that the wound was caused by a key. When Dr. Gerber was asked whether Rwango's chest wound could have been inflicted with a key if "there [was] enough force such as the victim jumping on top of the person while the other person thrusts upward," he responded that it was possible.

Wegayehu Mengesha testified that when he arrived at the party, he observed that Defendant and Rwango were pushing each other. Mengesha subsequently saw Rwango "swing his leg" at Defendant. Defendant then fell to the ground and Rwango grabbed Defendant's shirt. Defendant and Rwango began struggling, and Rwango eventually ended up on top of Defendant. Mengesha then saw Rwango stand up and he saw Defendant put something in his pocket and run away. Mengesha noticed that when Rwango stood up, he was bleeding from the chest.

Donte Jones testified that he was working as a security guard at the Quality Inn on September 13, 1997. During the party, Jones heard a disturbance and he looked outside to see what had occurred. Jones saw one man whose arm was bleeding and he also saw another man on the ground who was being kicked. Jones believed that the man on the ground was kicked by at least one person, and possibly several people. Jones could not identify anyone who was involved in the incident.

## II. LESSER-INCLUDED OFFENSE

Defendant was charged with first degree murder in count one of the indictment. At the close of the State's proof, the trial court granted a motion for judgment of acquittal for first degree murder and the case was subsequently submitted to the jury on the lesser-included offense of second degree murder. The trial court instructed the jury on the lesser-included offenses of voluntary manslaughter and reckless homicide, but the court denied a request to instruct the jury on criminally negligent homicide. Defendant contends that the trial court erred when it failed to instruct the jury on criminally negligent homicide as a lesser-included offense of second degree murder.

## A.

Tennessee Code Annotated section 40-18-110(a) provides that a trial court must charge the jury with all lesser-included offenses included in the indictment, without any request on the part of the defendant to do so. Tenn. Code Ann. § 40-18-110(a) (1997). Under this provision, "'a trial court must instruct the jury on all lesser-included offenses if the evidence at trial is legally sufficient to support a conviction for the lesser offense.'" State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999) (quoting State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999)).

Under the test recently set forth by the Tennessee Supreme Court, an offense is a lesser included offense of another if:
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> > (1) a different mental state indicating a lesser kind of culpability; and/or
> > (2) a less serious harm or risk of harm to the same person, property or public interest; or
> (c) it consists of
> > (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> > (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> > (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466–67.

If a particular offense is a lesser-included offense under the above test, the next inquiry is whether the evidence justifies a jury instruction on such lesser offense. Id. at 467. This inquiry has two parts. "First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense." Id. at 469. "In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence." Id. "Second,

the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." Id.

**B.**

Initially, the State contends that the Burns test is inapplicable in this case because Burns was not decided until after Defendant's trial was completed. Specifically, the State argues that the Burns test cannot be applied retroactively to a case in which the trial was held before the test was set forth by the supreme court. However, the Burns test has been applied retroactively by this Court too often for the retroactive nature of the Burns test to be seriously questioned. See, e.g., State v. Harvey Phillip Hester, No. 03C01-9704-CR-00144, 2000 WL 294964 (Tenn. Crim. App, Knoxville, Mar. 22, 2000); State v. Terry T. Lewis, No. M1999-00876-CCA-MR3-CD, 2000 WL 284181 (Tenn. Crim. App., Nashville, Mar. 17, 2000); State v. Khanh V. Le, No. W1998-00637-CCA-R3-CD, 2000 WL 284425 (Tenn. Crim. App., Jackson, Mar. 9, 2000); State v. Gary Lee Miller, No. M1998-00788-CCA-R3-CD, 2000 WL 246452 (Tenn. Crim. App., Nashville, Mar. 6, 2000); State v. Brandon Patrick, No. 03C01-9905-CC-00201, 2000 WL 122247 (Tenn. Crim. App, Knoxville, Jan. 26, 2000); State v. David Michael Gamble, No. 03C01-9812-CR-00442, 2000 WL 45718 (Tenn. Crim. App., Knoxville, Jan. 21, 2000); State v. Laconia Lamar Bowers, No. E1999-00170-CCA-R3-CD, 2000 WL 15020 (Tenn. Crim. App., Knoxville, Jan. 11, 2000). Clearly, the above cases indicate that Burns is applicable retroactively to cases on direct appeal. Thus, the Burns test is applicable in this case.

**C.**

It is evident that criminally negligent homicide is a lesser-included offense of second degree murder under part (a) of the Burns test. In Burns, the Tennessee Supreme Court stated that part (a) of the test is essentially the same as the "statutory elements approach" for determining whether one offense is a lesser-included offense of another that it had previously established in Howard v. State, 578 S.W.2d 83 (Tenn. 1979). Burns, 6 S.W.3d at 467. Under Howard, "an offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not congruent with, all the elements of the lesser." 578 S.W.2d at 85.

In State v. Lynn, 924 S.W.2d 892 (Tenn. 1996), the Tennessee Supreme Court expressly held that "[c]riminally negligent homicide is . . . a lesser included offense of second-degree murder pursuant to the definition in Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979)." Lynn, 924 S.W.2d at 899. The supreme court noted that:

> Criminally negligent homicide requires that an accused engage in criminally negligent conduct which results in death. Tenn. Code Ann. § 39-13-212 (1991 Repl.). Second-degree murder is a knowing killing of another. Tenn. Code Ann. § 39-13-210 (1995 Supp.). Our criminal code defines the mens rea of criminal negligence as occurring if a person acts intentionally, knowingly, or recklessly. Tenn. Code Ann. § 39-11-301(a)(2) (1991 Repl.). Therefore, an offense that requires that the accused act knowingly necessarily includes offenses in which the accused's mental state was one of criminal negligence.

Id.

Because criminally negligent homicide is a lesser-included offense of second degree murder under the Howard test and because part (a) of the Burns test is essentially the same as the Howard test, criminally negligent homicide is therefore a lesser-included offense of second degree murder under part (a) of the Burns test.

**D.**

Having determined that criminally negligent homicide is a lesser-included offense of second degree murder, we must also determine whether the evidence justified an instruction on criminally negligent homicide. As previously stated, this inquiry involves two determinations. "First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense." Burns, 6 S.W.3d at 469. "In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence." Id. "Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." Id.

Under Tennessee law, criminally negligent homicide is defined as "[c]riminally negligent conduct which results in death." Tenn. Code Ann. § 39-13-212(a) (1997). In addition,
> "Criminal negligence" refers to a person who acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-106(a)(4) (1997).

We conclude that when the evidence is viewed "liberally in the light most favorable to the existence of [criminally negligent homicide] without making any judgments on the credibility of such evidence," there was evidence that "reasonable minds could accept as to" that offense. Mengesha testified that he observed Defendant and Rwango both pushing each other and he then saw Rwango kick Defendant, causing Defendant to fall to the ground. Mengesha testified that Rwango grabbed Defendant's shirt, Rwango and Defendant then began struggling, and Rwango eventually ended up on top of Defendant. Mengesha also testified that after Rwango and Defendant struggled with each other for a brief period, Rwango stood up and held his bleeding chest. In addition, the only identifiable object any of the witnesses ever saw in Defendant's hand was a key. No witness could affirmatively testify that he or she actually saw a knife and no knife was ever found on Defendant's person or in his residence or vehicle. Further, Dr. Gerber testified during cross-examination that it was possible that Rwango's chest wound was caused by a key and it was possible that the wound could have been inflicted with a key if "there [was] enough force such as the victim jumping on top of the person while the other person thrusts upward."

Under these circumstances, we conclude that there was evidence that reasonable minds could accept as to the lesser offense of criminally negligent homicide. We also conclude that the evidence

in this case was sufficient to support a conviction for criminally negligent homicide. Therefore, we hold that the trial court erred when it failed to instruct the jury on the lesser-included offense of criminally negligent homicide.

**E.**

Having determined that the trial court erred when it failed to instruct the jury on the lesser-included offense of criminally negligent homicide, we must also determine whether the error was harmless.

We note that there has been some disagreement about the proper standard for determining whether an erroneous failure to instruct on a lesser-included offense is reversible error. For instance, some members of this Court have concluded that a trial court's erroneous failure to instruct on a lesser-included offense is always subject to the following rule:

> Reversal is required if the error affirmatively appears to have affected the results of the trial on the merits, or in other words, reversal is required if the error more probably than not affected the judgment to the defendant's prejudice.

State v. Khanh V. Le, No. W1998-00637-CCA-R3-CD, 2000 WL 284425, at *8 (Tenn. Crim. App., Jackson, Mar. 9, 2000) (quoting State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998)). However, one member of this Court has concluded that the above rule as stated in Williams is limited to cases in which the jury convicts a defendant for the highest offense on which it is instructed, to the exclusion of a lesser-included offense on which it was instructed that is higher than the lesser-included offense that it was not instructed on. Khanh V. Le, 2000 WL 284425, at *12–14 (Woodall, J., dissenting) (noting that Williams held that the failure to instruct the jury on voluntary manslaughter was harmless error because the jury was instructed on both first and second degree murder and chose to convict the defendant of the highest offense of first degree murder rather than second degree murder).

We also note that although the supreme court made the above statement in Williams, it also stated that "the trial court's erroneous failure to charge [the lesser-included offense] is harmless beyond a reasonable doubt . . . ." 977 S.W.2d at 106. Moreover, in State v. Bolden, 979 S.W.2d 587 (Tenn. 1998), the supreme court stated that the purpose of the statute requiring instruction on lesser-included offenses is to protect the right to trial by jury and stated that the obligation under this statute is mandatory. Id. at 593. Further, the supreme court cited Williams for the proposition that "[t]he failure to instruct on a lesser offense . . . may be shown to be harmless beyond a reasonable doubt under some circumstances." Bolden, 979 S.W.2d at 593. Further, the supreme court recently held that a trial court's failure to instruct on a lesser-included offense was reversible error because when the evidence was viewed in the light most favorable to the lesser-included offense, the jury "might have concluded" that the defendant was guilty of the lesser rather than the greater offense. State v. Eric Flemming, --- S.W.3d ---, No. M1997-0073-SC-R11-CD, slip op. at 6 (Tenn. April 3, 2000) (emphasis added). Significantly, in Eric Flemming, the supreme court made no reference to the rule stated above from Williams. Given the supreme court's decisions in Bolden and Eric Flemming, we conclude that the general rule is that the erroneous failure to instruct on a lesser-included offense is reversible error unless it is shown to be harmless beyond a reasonable doubt.

In this case, the jury acquitted Defendant of second degree murder and voluntary manslaughter and convicted him of reckless homicide—the lowest offense on which it was instructed. We cannot say with even the least degree of confidence that had the jury also been instructed on criminally negligent homicide, the jury would have convicted Defendant of reckless homicide instead of criminally negligent homicide. Indeed, we note that essentially, the only difference between reckless homicide and criminally negligent homicide is that reckless homicide requires proof that the defendant was aware of but consciously disregarded a substantial and unjustifiable risk while criminally negligent homicide requires proof that the defendant should have been aware of a substantial and unjustifiable risk. See Tenn Code Ann. §§ 39-11-106(a)(4); 39-11-106(a)(31); 39-13-212(a); 39-13-215(a) (1997). We cannot say that the proof that Defendant was aware of and consciously disregarded a substantial and unjustifiable risk was so overwhelming that if the jury had been given a choice, the jury would not have determined merely that Defendant was not aware but should have been aware of the risk. Thus, we conclude that the trial court committed reversible error. See State v. Michael Jason Powers, No. M1998-00264-CCA-R3-CD, 1999 WL 1103493, at *5 (Tenn. Crim. App., Nashville, Dec. 7, 1999) (holding that the trial court's error in failing to instruct the jury on a lesser-included offense was reversible error because the jury convicted the defendant of the lowest offense for which it was instructed and this Court could not say that the jury would have convicted the defendant of the greater offense rather than the lesser offense if it had been given the choice).

Because the trial court erred when it failed to instruct the jury on the lesser-included offense of criminally negligent homicide, we reverse Defendant's conviction for reckless homicide and we remand this matter for a new trial.

### III. SENTENCING

Defendant challenges both the length of his reckless homicide sentence and the consecutive nature of his sentences. Because we have reversed Defendant's conviction for reckless homicide, we need not address these issues.

### IV. CONCLUSION

In conclusion, we hold that the trial court erred when it failed to instruct the jury on the lesser-included offense of criminally negligent homicide and we reverse Defendant's conviction for reckless homicide and remand this matter for a new trial. However, Defendant has not challenged his conviction and his sentence for aggravated assault, and we affirm the judgment of the trial court in that regard.