IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 12, 2015

**CURTIS DWAYNE STAGGS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Lawrence County**
No. 31393     Stella L. Hargrove, Judge

**No. M2014-01416-CCA-R3-PC – Filed June 29, 2016**

The Petitioner, Curtis Dwayne Staggs, appeals the Lawrence County Circuit Court's denial of his petition for post-conviction relief from his convictions of first degree premeditated murder, first degree felony murder, and aggravated robbery and resulting effective sentence of life plus twelve years. On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to raise the statute of limitations as a defense against his aggravated robbery charge and because counsel failed to request a jury instruction cautioning the jury to evaluate the weight and credibility of a witness's testimony in light of the witness's agreement with the State. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. CAMILLE R. MCMULLEN, J., filed a dissenting opinion.

Ronald G. Freemon, Columbia, Tennessee, for the appellant, Curtis Dwayne Staggs.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; and Brent A. Cooper, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

We glean the following relevant facts from this court's opinion of the Petitioner's direct appeal of his convictions:

This case arises from the Defendant's participation in a robbery and shooting of the victim, Joann Rigling, who died from the injuries she sustained. The victim was found on June 19, 1992, with one gunshot above her eye behind the counter of Phillip's One-Stop market in Saint Joseph, Tennessee, and the market cash register was missing. Jimmy Dale Hogan and Tammy Smith were arrested for the murder and robbery. Hogan was convicted [of first degree felony murder and especially aggravated robbery] after a jury trial but obtained post-conviction relief on appeal, and this Court ordered a new trial [on felony murder]. During the reinvestigation of these crimes in preparation for Hogan's retrial, authorities learned additional information that led a Lawrence County grand jury to indict the Defendant for first degree premeditated murder, first degree felony murder, and aggravated robbery for his role in the 1992 murder and robbery.

State v. Curtis Dewayne Staggs, No. M2011-02361-CCA-R3-CD, 2012 WL 5542690, at *1 (Tenn. Crim. App. at Nashville, Nov. 13, 2012).

At the Petitioner's trial, the most damaging evidence against him came from Hogan, who testified for the State that about one week before the crimes, he was present at a meeting in which the Petitioner and the victim's husband, Phillip Rigling, discussed the robbery. Id. at *5. Hogan testified that on the day of the crimes, he and the Petitioner drove to Phillip's One-Stop market and entered the store. Id. at * 6. Hogan said that the Petitioner ordered the victim to open the cash register, that the victim refused, and that the Petitioner shot her. Id. On cross-examination, Hogan acknowledged that he had almost completed his twenty-year sentence for especially aggravated robbery and that he was testifying against the Petitioner in exchange for a concurrent, twenty-year sentence for felony murder. Id. at *7. He also acknowledged that he was arrested for the crimes in 1996 but did not implicate the Petitioner until 2010. Id.

The jury convicted the Petitioner as charged of first degree premeditated murder, first degree felony murder, and aggravated robbery. Id. at *10. The trial court merged the felony murder conviction into the premeditated murder conviction and sentenced him to life. Id. The trial court sentenced the Petitioner to twelve years for the aggravated robbery conviction and ordered that the sentences be served consecutively for a total

effective sentence of life plus twelve years.  Id.  The Petitioner appealed to this court, and this court affirmed his convictions.  Id. at *18.  Subsequently, the Petitioner filed a pro se petition to rehear, arguing for the first time that the State indicted him for aggravated robbery outside the statute of limitations.  This court determined that he was not entitled to relief because he was still represented by counsel and because counsel did not raise the issue in the original appellate brief.  State v. Curtis Dewayne Staggs, No. M2011-02361-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 18, 2012) (order).

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely petition for post-conviction relief, alleging, in pertinent part, that he received the ineffective assistance of counsel because trial counsel failed to argue that the statute of limitations had expired for the aggravated robbery charge and failed to request a jury instruction cautioning the jury to evaluate Hogan's testimony carefully in light of his "deal" with the State.  The post-conviction court appointed counsel, and counsel filed an amended petition.  In the amended petition, counsel alleged that trial counsel was ineffective by failing to enforce the statute of limitations for the aggravated robbery charge because the crime occurred eighteen years before the State indicted the Petitioner and because the indictment failed to "[put] the Petitioner on notice of those circumstances which would allow the State to proceed with prosecution of the aggravated robbery charge[.]"  Counsel also alleged in the amended petition that trial counsel was ineffective for failing to request a jury instruction regarding Hogan's testimony pursuant to State v. Bolden, 979 S.W.2d 587 (Tenn. 1998).

Relevant to this appeal, trial counsel testified at the evidentiary hearing that he was appointed to represent the Petitioner on December 12, 2010, and that he first met with the Petitioner on December 29, 2010.  They reviewed discovery materials and discussed the case.  The Petitioner's trial occurred about eight months later.  The Petitioner was incarcerated in Lawrenceburg, the city in which counsel's office was located, so counsel was able to meet with the Petitioner "numerous times" before trial.

Counsel testified that he and the Petitioner discussed the State's "star" witness, Hogan.  They also discussed whether the Petitioner wanted to testify and any witnesses he wanted to testify on his behalf.  The Petitioner maintained that he was not involved in the crimes and did not want counsel to explore a guilty plea.  The State had charged the Petitioner in count three with aggravated robbery, and the Petitioner asked counsel "whether some or all of [the] charges were barred by the statute of limitations."  Counsel researched the law, which provided that if the Petitioner had lived out of state or concealed the crime, the statute of limitations was tolled.  Counsel said he did not pursue the statute of limitations issue because the Petitioner had been living in Missouri "for a number of years."

Trial counsel testified that the State gave him a letter in which it "outlined" Hogan's expected testimony and "what his plea deal would be if he testified in accordance with that." Counsel questioned Hogan about the agreement in front of the jury, and Hogan testified that he was to plead guilty in exchange for a twenty-year sentence. Counsel said he did not remember if he requested that the trial court instruct the jury to evaluate Hogan's testimony carefully in light of the plea agreement. Counsel also did not raise the instruction issue on direct appeal.

On cross-examination, trial counsel testified that he became licensed to practice law in 1997 and that he had been practicing about fourteen years at the time of the Petitioner's trial in 2011. He said that he practiced civil and criminal litigation and estimated that he had participated in fifteen to eighteen jury trials during his career. On redirect examination, counsel acknowledged that the indictment alleged that the Petitioner committed aggravated robbery on June 19, 1992.

The Petitioner testified that he was not guilty of the crimes and that he was hoping his post-conviction petition would result in a new trial or dismissal of the charges. The Petitioner first met trial counsel at the Lawrence County Jail, and they met four or five times, not including the Petitioner's appearances in court. The Petitioner said he was scared and that he relied on counsel. However, counsel had no trial strategy, saying only that "we're going to argue that you're innocent." The Petitioner and counsel discussed the statute of limitations for aggravated robbery, and the Petitioner asked counsel about the statute of limitations several times. Counsel told the Petitioner that the statute of limitations did not apply because the Petitioner had lived in Missouri. The Petitioner said he did not move to Missouri until 2002, ten years after the robbery. The Petitioner stated that after the jury convicted him, he asked counsel to appeal the statute of limitations issue. He identified two letters he wrote to trial counsel, dated December 2012 and January 2013, in which he continued to question counsel about the statute of limitations issue. The Petitioner said he thought the statute of limitations was "out" on the aggravated robbery charge.

On cross-examination, the Petitioner testified that during one of his meetings with trial counsel, counsel brought "a box full of stuff down there to look at." He denied that the meeting lasted six hours and said that their meetings "never lasted two hours. One of them might have lasted a couple of hours, but the rest of them never did." The Petitioner acknowledged that according to counsel's records, they met at the jail at least ten times. The Petitioner denied telling Tennessee Bureau of Investigation Agent Josh Melton, who worked with the district attorney's office on Hogan's retrial, that he had been living in Missouri ten or twelve years. He said that he moved to Missouri in 2002 and that he never concealed the crime.

In a written order, the post-conviction court found the Petitioner not credible "on any issue raised in the Petitions" and denied his petition for post-conviction relief. As to the statute of limitations for aggravated robbery, the post-conviction court noted that trial counsel told the Petitioner that the statute of limitations was tolled because the Petitioner lived in Missouri after the crimes. The court concluded that counsel "raised every possible defense available to Petitioner." As to the jury instruction issue, the court found that "the charge to the jury satisfied State v. Bolden relative to the plea agreement of co-defendant, Jimmy Dale Hogan."

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish

both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

### A. Statute of Limitations

First, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to raise the statute of limitations as a defense to the aggravated robbery charge. The State argues that the post-conviction court properly denied relief because the court found the Petitioner not credible when he claimed that he did not move to Missouri until 2002. We conclude that the Petitioner has failed to demonstrate that he received the ineffective assistance of counsel.

Aggravated robbery is a Class B felony. Tenn. Code Ann. § 39-13-402(b). The statute of limitations for a Class B felony is eight years. Tenn. Code Ann. § 40-12-101(b)(2). However, "[n]o period during which the party charged conceals the fact of the crime, or during which the party charged was not usually and publicly resident within the state, is included in the period of limitation." Tenn. Code Ann. § 40-12-103. "If the tolling . . . is triggered by the absence of the accused from the state, obviously upon his or her return to the state the statute would begin to run. If the tolling is triggered by concealment, the statute would begin to run when the concealment ceased." State v. Davidson, 816 S.W.2d 316, 321 (Tenn. 1991).

As our supreme court has stated, "[W]here an indictment or presentment shows upon its face, or by stipulation, that the applicable statute of limitations has expired, the instrument must allege facts which demonstrate that the statute was tolled for a sufficient period of time to avoid the bar of the statute of limitations." Id. at 321. The State may amend the indictment by alleging the facts which served to toll the statute. Morgan v. State, 847 S.W.2d 538, 542 (Tenn. Crim. App. 1992). The State is required "to plead and prove the tolling. Where the allegations are insufficient, the indictment or presentment will be dismissed upon motion, and there can be no trial in which to prove what was not alleged." Id.

Here, post-conviction counsel alleged in the amended petition that trial counsel was ineffective by failing to enforce the statute of limitations as to the aggravated robbery charge because the crime occurred eighteen years before the indictment and because the indictment failed to "[put] the Petitioner on notice of those circumstances which would allow the State to proceed with prosecution of the aggravated robbery charge[.]" At the evidentiary hearing, post-conviction counsel introduced a copy of the indictment into

evidence. In count three of the July 29, 2010 indictment, the State alleged that the Petitioner committed aggravated robbery on June 19, 1992. However, the State did not allege any facts regarding the Petitioner's moving out of State that would have tolled the statute of limitations. Thus, the indictment was untimely on its face because the statute of limitations expired on June 19, 2000. Moreover, our review of the direct appeal record shows that the State did not file an amended indictment or that trial counsel filed a pre-trial motion asserting a defect in the indictment.

Nevertheless, because this is a case for post-conviction relief, the burden was on the Petitioner to demonstrate that he was actually prejudiced by trial counsel's failure to seek relief from a prosecution barred by the statute of limitations. Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); see Morgan, 847 S.W.2d at 540. The Petitioner argued at the evidentiary hearing and contends on appeal that the statute of limitations was not tolled because he did not move to Missouri until 2002, ten years after the crimes and two years after the statute of limitations expired. He notes that at his 2011 trial, Agent Melton testified that he thought the Petitioner had been living in Missouri only eight or nine years. However, our review of the trial transcript reveals that Agent Melton actually stated, "I want to say eight to nine [years], but I would be testifying without a 100 percent accuracy to that." Furthermore, although the Petitioner testified at the evidentiary hearing that he moved to Missouri in 2002, the post-conviction court found him not credible. We note that in the Petitioner's pro se petition to rehear, which he filed in this court in November 2012, the Petitioner stated, "Petitioner did not leave Tennessee until the Spring of 1998. Petitioner did not buy a home in Missouri until the Spring of 2000." Thus, by the Petitioner's own admission, he left the State of Tennessee approximately six years after the crimes, two years before the statute of limitations for the aggravated robbery charge expired. Thus, we agree with the post-conviction court that the Petitioner has failed to show that he was actually prejudiced by counsel's deficient performance.

## B. Jury Instruction

Next, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to request a jury instruction in which the court cautioned the jurors to evaluate the weight and credibility of Hogan's testimony in light of his agreement with the State. The State argues that the Petitioner is not entitled to relief because the jurors were aware of Hogan's plea agreement and because the trial court instructed them to consider whether any promises or other influences existed that could have affected the witness's testimony. We agree with the State.

In Bolden, the defendant and his co-defendant were charged with first premeditated degree murder. 979 S.W.2d at 589. The codefendant entered into an agreement with the State in which he agreed to testify truthfully against the defendant in

exchange for a plea to second degree murder and a twenty-five-year sentence. Id. At trial, though, the codefendant claimed that he did not remember what happened on the night of the murder. Id. During a recess, the State entered into a second agreement with the codefendant in which he agreed to testify against the defendant in exchange for a plea to second degree murder and a fifteen- to twenty-five-year sentence. Id. The defendant, whom the jury convicted of second degree murder, argued on direct appeal of his conviction that he was denied his right to due process and a fair trial because the agreement required that the codefendant testify to specific acts. Id. at 590. Our supreme court disagreed, holding that nothing indicated the codefendant was required to give false testimony or testify according to a particular script. Id. at 592. The supreme court also noted that "essential safeguards" were followed in that the jury and the defendant were informed of the agreement, the defendant conducted a full and vigorous cross-examination of the codefendant, and "the jury was instructed that its function was to weigh the testimony and determine the credibility of the witness." Id. at 592-93.

Similarly, nothing in this case indicates that Hogan's plea agreement required that he give false testimony or testify according to a script. The jury and the Petitioner were informed of the agreement, and trial counsel cross-examined Hogan about it. Hogan testified that he was still serving his twenty-year sentence for robbing Phillip's One-Stop and that he was testifying truthfully against the Petitioner in exchange for a concurrent, twenty-year sentence. He acknowledged that he had served most of his sentence and that he was going to be released from confinement soon. Counsel continued to cross-examine Hogan vigorously about his participation in the crimes and his waiting fourteen years to implicate the Petitioner.

Moreover, our review of the preliminary jury instructions shows that the trial court instructed the jurors that they were to assess the credibility of the witnesses and the importance of their testimony. The court then listed eight factors the jury should consider in making its assessment, including the following:

> 5. Does the witness have bias, prejudice or personal interest in how this case is decided?
>
> 6. Are there any promises, threats, suggestions, or other influences that affected how the witness testifies?
>
> 7. In general, does the witness have any special reason to tell the truth or any special reason to lie?

Although the trial court did not specifically instruct the jury to evaluate the weight and credibility of Hogan's testimony carefully in light of the plea agreement, Bolden does not

require such an instruction. In any event, the three factors stated above inherently instructed the jury to do so. Thus, we conclude that trial counsel did not render deficient performance or that the Petitioner was prejudiced by any deficiency.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE