IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2004

## MICHAEL DOUGLAS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26671      Arthur T. Bennett, Judge**

---

### No. W2003-02224-CCA-R3-PC  - Filed July 26, 2004

---

The Appellant, Michael Douglas,[1] appeals as of right from the judgment of the Shelby County Criminal Court denying his petition for post-conviction relief. Douglas was convicted in 2000 of attempted second degree murder and especially aggravated robbery. On appeal, Douglas contends that he was denied the effective assistance of counsel due to trial counsel's (1) failure to seek suppression of a photo array because the photograph used was obtained following an unlawful arrest and (2) failure to adequately cross-examine a witness as to whether an agreement existed between the witness and the State. After review of the issues presented, the judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Lance R. Chism, Memphis, Tennessee, Attorney for Appellant, Michael Douglas.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffee, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

The relevant facts established that, on July 21, 1998, the victim, Louis Hill, joined a dice game "for about thirty minutes" in a residential area of Memphis known as "Orange Mound." The

---

[1] As is the policy of this court, we have adopted the name that appears on the initial pleading filed in the case, *i.e.*, the *pro se* petition for post-conviction relief. However, we note that the Appellant's name also appears as "Lawrence Bernard Douglas" and, at the post-conviction hearing, the Appellant indicated that "Michael" was a nickname.

codefendant, John Montgomery, and Jerion Craft were among the players. The victim had approximately $140 with him, and he was wearing a gold herringbone necklace and a gold nugget ring.

The victim left the dice game but returned after about fifteen minutes. The game was still going on, although with some different players.

As he was leaving, he saw two men coming along a path that led from other neighboring backyards into the area of the dice game. Hill testified that, as he continued walking toward Park Avenue, someone grabbed his shirt from behind. Hill spun around and was shot in the lower groin area. He fell back onto the ground, and his assailant demanded his money. Hill said he told the shooter to take the money and handed him the $140 or so that he had in his pocket. The second man he recognized as Montgomery. Montgomery hit him in the face and yanked the necklace from his neck and took his ring. Hill heard someone say "here come the police," and his assailants then ran. Hill testified that he made it to the front yard where someone called an ambulance.

Jerion Craft testified that, on the night of the shooting, he and John Montgomery had been gambling with others in the crap game behind the house on Park Avenue in Orange Mound. He saw the defendant, armed with a pistol, grab the victim and fire the pistol. He had not heard the two arguing prior to the shot. Additionally, he did not see any movement by the victim which made it appear that he was reaching for a pistol, himself. Craft said that the victim was wearing a small medallion that evening, which the defendant removed from him after the shooting. Montgomery got something from the victim, but Craft could not see what it was. He later told Memphis police officers what he had observed.

Sergeant Joseph Scott with the Memphis Police Department interviewed the victim. He had learned the names of the codefendant and the defendant from Jerion Craft. Sergeant Scott prepared photographic lineups for Hill to view. Hill had already identified the codefendant, Montgomery, as the person who was with the defendant and who hit him in the face and took his necklace and ring. On August 2, Hill was able to immediately pick out the defendant from a photographic lineup as the person who shot him. The photograph used by Sergeant Scott was the most recent on file for the defendant, a photograph that had been taken some nine days after the crime date, as a result of a traffic violation. The defendant was wearing a gold, herringbone necklace, which the victim identified as the one stolen from him on the night of the shooting.

. . .

The defendant's version of what then happened differs substantially from that testified to by the victim but is consistent with his affirmative defense of self-defense. According to the defendant, he got into the dice game to cheat the "pluck" out of his money. . . .

The defendant testified that he played in the dice game with the victim for about twenty minutes and had won $150 to $200 from the victim, when he was caught cheating. The victim became angry and started calling the defendant names. According to the defendant, Montgomery slipped the gun into the defendant's back waistband. When the victim seemed to be reaching for a weapon, the defendant pulled the gun from his back waistband and shot the victim once and ran.

After the shooting, the defendant ran back to his home where, some thirty minutes later, Montgomery showed up. According to the defendant, the two were "sitting there chitchatting about some rocks he had got and a necklace he had got." The defendant gave Montgomery $30 in cash for the necklace. It was a gold herringbone chain necklace. . . . The defendant testified that he suspected that Montgomery had taken the necklace from the victim. The defendant was photographed by the police nine days later, apparently as part of a booking for a traffic offense on July 30, 1998, wearing the necklace. As to the gun, the defendant testified that he and Montgomery took it to the home of Jerion Craft, who was told by Montgomery to "take care" of it.

*State v. Lawrence Douglas*, No W2000-01749-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug. 10, 2001).

On May 10, 2000, a jury found the Appellant guilty of attempted second degree murder and especially aggravated robbery, and the Appellant was sentenced to an effective twenty-year prison sentence. The Appellant's convictions and sentence were affirmed by a panel of this court on direct appeal. *See id.*

On July 30, 2002, the Appellant filed a *pro se* petition for post-conviction relief. Following the appointment of counsel, an amended petition was filed, wherein the Appellant sought relief on the following grounds:[2]

(1) The photograph that was shown to the victim to identify Petitioner was the fruit of an unlawful arrest because Petitioner was arrested for a misdemeanor and this photo was taken as a result of that arrest; therefore, the photograph should not have been used; moreover, counsel was ineffective for not raising this issue.

---

[2]In addition to these claims of ineffective assistance of counsel, both the *pro se* and amended petitions allege numerous other grounds for relief. However, the denial of these grounds is not raised as error on appeal.

(2) Counsel's cross-examination of [Jerion] Craft was ineffective because counsel did not ask [him] whether he received any benefits in exchange for his testimony.

A hearing was held on June 30, 2003, at which the Appellant and trial counsel testified. The post-conviction court denied relief as to all issues. This timely appeal followed.

## ANALYSIS

The Post-Conviction Procedure Act, Tennessee Code Annotated §§ 40-30-101 to -313 (2003), provides a method by which a defendant may challenge a conviction or sentence for violation of a state or federal constitutional right. Tenn. Code Ann. § 40-30-103 (2003). In order to succeed on a post-conviction claim, the Appellant bears the burden of showing by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-110(f) (2003).

To succeed in a challenge for ineffective assistance of counsel, the Appellant must establish, under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984): (1) deficient representation and (2) prejudice resulting from the deficiency. Thus, the Appellant must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and the Appellant must demonstrate that counsel's errors were so serious as to deprive the Appellant of a fair trial, a trial whose result is reliable. *Id.*

With respect to deficient performance, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). This court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted). We should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Additionally, this court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90.

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *see Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## I. Photo Array

The Appellant argues that trial "counsel was ineffective for not moving to suppress victim's identification testimony based on the fact that the photograph used [in the photo array] to identify [the Appellant] was the fruit of an unlawful arrest." Sergeant Joseph Scott of the Memphis police department prepared a photo array for the victim to view. *Lawrence Douglas*, No. W2000-01749-CCA-R3-CD. Sergeant Scott "call[ed] the photographic lab" and ordered "the most recent photograph." The "most recent on file" for the Appellant was taken on July 30, 1998, nine days after the shooting, "apparently as part of a booking for a traffic offense[.]" *Id.* On August 2, the victim, without hesitation, identified the Appellant from the photo array as the person who shot him. *Id.* Relying on *State v. Walker*, 12 S.W.3d 460 (Tenn. 2000), the Appellant contends that he should have been issued a citation for the "traffic offense"[3] in lieu of a custodial arrest and, therefore, the photograph taken following his unlawful arrest was subject to suppression. While trial counsel did file a motion to suppress the photograph on other grounds, he contends that trial counsel was ineffective for not also raising this ground within the motion. Moreover, the Appellant argues that the post-conviction court erred by not allowing him to call and examine the officers involved in the misdemeanor arrest.

First, we are constrained to note that the Appellant cites no authority in support of his argument that a booking photograph, resulting from an illegal arrest, is inadmissible for identification purposes in an unrelated prosecution. *See* Tenn. R. App. P. 27(a)(7); *see also* Tenn. Ct. Crim. App. R. 10(b). Notwithstanding the Appellant's noncompliance with the rule, we elect to review the issue upon its merits.

Assuming, for argument's sake, that the Appellant was unlawfully arrested for the traffic offense, we, nonetheless, conclude that use of the booking photograph in this case was not error. With regard to a booking photograph itself, the majority rule in state and federal courts provides that:

> [B]ecause photographs are typically taken as a matter of routine in the course of booking and because these photographs become a permanent part of police files, it sometimes happens that a photo routinely taken after an illegal arrest will on some future occasion be utilized to connect a person with some crime totally unrelated to the reasons why the pre-photographing illegal arrest was made. Under these circumstances, courts are inclined to find attenuation. . . .

*United States v. Beckwith*, 22 F. Supp. 2d 1270, 1292 (D. Utah 1998) (quoting 5 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 11.4 (g), at 320-21 (3d ed. 1996)); *see also People v. McInnis*, 494 P.2d 690, 691-94 (1972) (taking of photograph during the booking process is standard police procedure,

---

[3]The pre-sentence report reflects that the Appellant pled guilty to a "traffic offense." The sentencing section for this conviction indicates that the offense was "allowing [an] unlicensed driver to drive." It appears from the record that the Appellant was arrested in conjunction with this offense because he allegedly failed to provide "satisfactory evidence of identification[.]" Tenn. Code Ann. § 40-7-118(c)(3) (2003).

bearing no relationship to purpose or validity of arrest or detention). Nonetheless, "courts should . . . be vigilant in determining in particular cases whether the photograph was come by as a consequence of an arrest made for the purpose of adding defendant's picture to the police mug books." 5 LaFave, Search and Seizure § 11.4(g), at 322; *see generally United States v. Crews*, 445 U.S. 463, 100 S. Ct. 1244 (1980).

In the present case, the pre-sentence report indicates that the Appellant had prior convictions for disorderly conduct in 1998 and for possession of cocaine in 1996. Additionally, the record reflects that the photograph used by Sergeant Scott was simply the "most recent on file" for the Appellant. *Lawrence Douglas*, No. W2000-01749-CCA-R3-CD. Thus, it is apparent from the record that the Appellant's picture would have already appeared in "the police mug books."

Therefore, because Sergeant Scott did not err by using the photograph, we find that trial counsel was not deficient for failing to raise a meritless argument. Moreover, the Appellant has failed to show that he was prejudiced by trial counsel's omission. The Appellant contends that he was prejudiced because, "[i]f the picture could have been suppressed, he wouldn't have to put[]on that self-defense theory. He could sit back and argue identity and might have had a good chance of winning on that." As noted by the post-conviction court, "the identity became moot once the defendant changed his strategy and decided the best way to proceed was self-defense." The Appellant's contention that suppression of the photograph would have allowed him to proceed under a mistaken identity theory seems implausible in light of the victim and Jerion Craft's identifications of the Appellant as the shooter. Accordingly, the Appellant has failed to prove that he received ineffective assistance of counsel by clear and convincing evidence.

## II. Cross-examination of Jerion Craft

Next, the Appellant submits "that counsel was ineffective for not vigorously cross-examining Jerion Craft in this case." Trial counsel testified that he was aware that Craft gave a statement to police while Craft was "in custody on charges of especially-aggravated robbery in connection with this case."[4] The record shows that Craft was released from custody and, following an investigation, no charges were ever filed against him. The Appellant, relying on *State v. Bolden*, 979 S.W.2d 587

---

[4]The Appellant argues that it was error for the post-conviction court not to allow him to introduce Craft's statement into evidence. The Appellant contends that "Craft's statement to the police was necessary as an exhibit at the post-conviction hearing because it shows that Craft was in custody at the time he gave his statement to the police." The post-conviction court found, "I don't think you need to introduce a statement to question about that, whether or not [trial counsel] should have asked [Craft] whether any deals were made or not. . . . [Y]ou can cover what you need to cover without putting in the statement[.]" It is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion. *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). Trial counsel testified to the relevant portions of Craft's statement and was questioned about the statement as it related to the Appellant's ineffective claim. Accordingly, we find no abuse of discretion.

(Tenn. 1998),[5] contends that trial counsel should have questioned Craft as to whether he received any benefit in exchange for his testimony.

At the post-conviction hearing, trial counsel was asked, "Well, if I could just ask you, did you know of any benefit that Mr. Craft received? Do you have any knowledge of any deals he might have received?" Trial counsel responded,

> I can remember [the Assistant District Attorney's] assurance that [Craft] had not received any benefit, and I can remember, . . . in general, part of the standard motions would request to be provided with such information, and as I said, I remember her assurance that he had not received any benefit. So I would say that it was not my belief that he had received any benefit.

Trial counsel further testified that he did not ask the challenged question in front of the jury because:

> when you do that, if I may say, the prosecution rehabilitates the[] witness in such a manner that they get to say all the things they want the jury to hear ten more times. The way I proceeded with this was to show that Craft was part of this, by using the statements that Montgomery had made and Craft's testimony in terms of disposing of the gun. Without getting into the detail, the transcript would reflect that Craft had a part in the disposal of the gun after the fact, and I used that to show the jury that Craft was not a good guy, and I thought that was more effective than asking him a question when I knew he was going to say no.

The post-conviction court found this claim to be without merit "because [it related] to trial strategy" and did not constitute "an egregious error" warranting post-conviction relief. The court noted, "[T]he failure to ask a question on cross-examination like that would not necessarily indicate ineffective assistance of counsel. . . . Otherwise, every question, cross-examination question that may have not been asked, maybe could have been asked, then you can always say ineffective assistance of counsel."

The record indicates that trial counsel filed a motion for discovery of any agreements the State had with its witnesses, and the State assured trial counsel that no agreement with Craft existed. This Court has noted that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991); *see also Hellard*, 629 S.W.2d at 9. Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics rarely provide a basis for post-conviction relief. Counsel has some discretion in conducting the defense and is entitled to use his or her best judgment in matters

---

[5]*Bolden* deals with the credibility and reliability of accomplice testimony where such testimony is a condition of the accomplice's plea agreement. *Bolden*, 979 S.W.2d at 590-94. The Appellant urges this court to extend *Bolden* to the present case. However, we decline to do so because Craft was not an accomplice and no deal was made in exchange for his testimony.

of trial strategy or tactics. *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1991) (citing *McBee v. State*, 655 S.W.2d 191, 193 (Tenn. Crim. App. 1983)). Having reviewed the record in this case, we are satisfied that trial counsel was not deficient in his cross-examination of Craft.

Moreover, the Appellant did not establish any prejudice resulting from the alleged deficiency. At trial, counsel established that (1) Craft was a bystander of the crime, (2) Craft, along with the Appellant and Montgomery, fled the scene immediately when someone yelled, "here come the police,"(3) Craft played a role in disposing of the weapon, and (4) Craft was questioned by Sergeant Scott about the circumstances surrounding the crime. Accordingly, the Appellant has failed to establish that trial counsel's failure to ask the challenged question deprived the Appellant of "a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

## CONCLUSION

Based upon the foregoing, we conclude that the post-conviction court did not err in finding that the Appellant received the effective assistance of counsel. Accordingly, the judgment of the Shelby County Criminal Court is affirmed.

 

_____
DAVID G. HAYES, JUDGE