IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. RODICUS JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 02-07973, 03-07621      Chris Craft, Judge**

_____

**No. W2004-02556-CCA-R3-CD  - Filed February 2, 2007**

_____

The defendant, Rodicus Johnson,[1] was indicted for first degree murder, felony murder, attempted premeditated murder, and conspiracy to commit premeditated first degree murder.  He was later indicted for aggravated perjury relating to his testimony given during a pre-trial hearing on his motion to suppress.  The defendant requested consolidation of the indictments for a single trial.  A Shelby County jury convicted the defendant of the lesser offenses of second degree murder and reckless endangerment and of aggravated perjury.  The trial court sentenced him to twenty-five years for second degree murder, six months for reckless endangerment ,and two years and six months for aggravated perjury.  The trial court ordered the sentences for second degree murder and reckless endangerment to be served concurrently and the aggravated perjury charge to be served consecutively to the others, for a total effective sentence of twenty-seven years and six months.  In this appeal, the defendant contends that his conviction of aggravated perjury should be reversed because:  (1) there was insufficient evidence to support his conviction or corroborate the testimony of an accomplice as relates to the shooting; (2) the language of the indictment was insufficient to allege the offense of aggravated perjury; and (3) the trial court erred in failing to order a new trial because the prosecution failed to disclose to the defendant that they would take a key witness' testimony into consideration regarding his pending charges.  After careful review, we find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

C. Michael Robbins and Coleman Garrett, Memphis, Tennessee, for the appellant, Rodicus Johnson.

_____

[1] In accordance with this court's practice, we list the defendant's name as it appears on the underlying indictment, but elsewhere in the record the defendant is referred to as "Rodricus Johnson."

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; and Reginald Henderson and James Lammey, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

Ten-year-old Damien Woodard, the victim, was fatally shot in or on a playground when the defendant and others were chasing and shooting at Christopher Williams. A trio, including the defendant and two brothers of Patrick Parham, set out to find Michael Williams to avenge a shooting incident earlier that day between Michael Williams and Patrick Parham. The trio instead found Christopher Williams, Michael's brother, and chased after him while shooting. Christopher escaped without injury while one of the bullets fired struck and killed the victim.

Witnesses saw three men shooting guns at the fleeing Williams, and the defendant was specifically identified as one of the shooters. The defendant denied that he fired any shots but did tell police that he was present with the Parham brothers and was armed with a .380 pistol during the shooting.

Witness Herman Sallie testified that immediately after the incident the defendant admitted shooting at Christopher Williams, stated he "hit one of them," and believed that he shot someone's little brother because he saw a boy lying on the ground. At the time of his testimony, Sallie was charged with facilitation of first degree murder for his involvement in driving Herman Parham to the scene of the crime. A jury instruction was given regarding accomplice testimony and it was explained in detail that the testimony of a witness that is an accomplice must be corroborated. The jury was specifically instructed that they should determine whether Sallie was an accomplice. If they determined that he was an accomplice, they were told not to convict on his testimony alone if it was not corroborated. If they determined that he was not an accomplice, it was in their discretion as to the weight to give his testimony.

Analysis

On appeal, the defendant argues that his convictions should be reversed for four reasons: (1) He contends there was insufficient evidence to support his aggravated perjury conviction; (2) There was insufficient evidence to corroborate the testimony of an accomplice; (3) The language of the indictment was insufficient to allege the offense of aggravated perjury, and (4) The trial court erred in failing to order a new trial because the prosecution failed to disclose to the defendant that they would take a key witness' testimony into consideration regarding his pending charges.

I. Sufficiency of the Evidence

The defendant contends that the evidence was not sufficient to sustain his conviction for aggravated perjury. However, he acknowledges that there was discrepancy between his testimony and the testimony of Investigator Davison at the suppression hearing. He contends that the conviction for aggravated perjury is grounded in speculation and suspicion and is insufficient to sustain his conviction. The State argues that the record clearly shows the defendant lied about not being informed of his Miranda rights prior to being interviewed by police on April 16, 2002. The State argues that the prosecution proved the elements of aggravated perjury beyond a reasonable doubt.

Perjury is defined under Tennessee Code Annotated section 39-16-702: "A person commits an offense who, with intent to deceive . . . [m]akes a false statement, under oath." Aggravated perjury is defined under Tennessee Code Annotated section 39-16-703 as perjury where "[t]he false statement is made during or in connection with an official proceeding."

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not re-weigh or re-evaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

At trial, the State presented the testimony of a court reporter for the Shelby County criminal courts. She testified that she transcribed the defendant's testimony as offered at the hearing on his

motion to suppress his pretrial statement. She said the defendant was placed under oath prior to testifying before the trial court on July 18, 2003. At trial, the court reporter read the transcript of the defendant's suppression hearing testimony into evidence without objection. The defendant testified that he signed an advice of rights form at the same time he was presented a copy of his printed statement. He said that he signed the statements when they were brought to him and denied ever having seen or heard the advice of rights warning prior to being given his printed statement. He specifically stated that the advice of rights was never read to him.

At trial, the State called Sergeant Earnestine Davison of the Memphis Police Department. She testified that she interviewed the defendant after she informed him of his rights and had him sign an advice of rights form. The signed form, which was offered as an exhibit, reflected that it was signed at 2:15 p.m. Sergeant Davison also testified that she took a statement from the defendant with the help of a transcriber who typed the statement so it could be seen and reviewed on a screen. The statement was transcribed, initialed on each page, and signed by the defendant. The statement was dated "4/16/02" with a time of 5:22 p.m.

The State also called the transcriber, Clara Benson, to testify that she was present with Sergeant Davison during the defendant's interview. She testified that the investigators read the defendant his rights and that he signed the form before they started their questioning. She said that she typed out the police questions and the defendant's responses as they were asked and answered. She recalled that the defendant watched as his answers were displayed on a screen. She said that the interview with the defendant ended at 5:22 p.m. and that the defendant signed his statement at that time.

Based on the testimony, we conclude that there was sufficient evidence to support the defendant's conviction for aggravated perjury. This issue is without merit.

Next, the defendant argues that the language employed in the indictment for the charge of aggravated perjury is insufficient to allege the offense of aggravated perjury. The State contends that the indictment, when considered with the bill of particulars, was sufficient to give the defendant notice of the false statement which constituted the aggravated perjury offense. The defendant's indictment for aggravated perjury reads in pertinent part:

> [O]n July 18, 2003, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly, and with intent to deceive, make a false statement under oath during an official proceeding, to-wit: A Motion to Suppress Statement Hearing in Division 3 of the Criminal Court of Shelby County, Tennessee, docket number 02-07973, the said false statement being material to the said official proceeding, in violation of [Tennessee Code Annotated section] 39-16-703, against the peace and dignity of the State of Tennessee.

In support of his argument, the defendant relies on this court's decision in State v. Cutshaw, 967 S.W.2d 332 (Tenn. Crim. App. 1997), in which a panel of this court held that an indictment must sufficiently inform the accused of every essential element of the offense charged and, further,

-4-

that a judgment based on an indictment or presentment that does not allege all the essential elements of the offense is a nullity. Cutshaw, 967 S.W.2d at 338. The State agrees that the defendant is correct in his assertion that the indictment does not specify the statement alleged to be the subject of the perjury charge but argues that the defendant requested a bill of particulars specifically setting forth the basis for the perjury charge and that their compliance therewith remedied any failure in putting the defendant on notice as to the specific allegation against him supporting the charge of aggravated perjury. To support their argument, the State relies on the opinion in State v. Beard, No. M2000-02207-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 78 (Tenn. Crim. App. Jan 31, 2002), appeal denied (Tenn. July 15, 2002), where a panel of this court concluded:

> The function of a bill of particulars is to provide a defendant with information about the details of the charge that are necessary in the preparation of his or her defense and to avoid prejudicial surprise at trial. The defendant should be given enough information about the events charged so that he or she may diligently prepare for trial. Where the indictment is not sufficiently detailed, a bill of particulars will serve this purpose.

Thus, the question of whether a bill of particulars is adequate to provide sufficient details of the offense appears to turn on whether the bill gives sufficient notice to the defendant to allow him or her to adequately prepare for trial. In the instant case, the State filed the bill of particulars four months prior to trial, which gave the defendant ample notice as to the allegedly perjured statement and the forum in which it was made. The State is no longer required to plead indictments with strict specificity, and our supreme court has held that "we now approach attacks upon indictments . . . from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality, or hair splitting fault finding." State v. Hill, 954 S.W.2d 725, 728 (Tenn. 1997) (citations omitted).

We conclude that the bill of particulars cured any defect in the indictment and was sufficient to allege the offense of aggravated perjury.

II. Corroboration of Accomplice Testimony

The defendant argues that the testimony of Herman Sallie was not sufficiently corroborated to support his conviction of second degree murder. He argues that because witness Sallie was charged with facilitation resulting from his transportation of the defendant to and from the scene of the shooting, he could have been charged as a principal for his actions and was, therefore, an accomplice. The defendant asserts that it is well settled that a conviction cannot stand based on the uncorroborated testimony of an accomplice, and he relies on our supreme court's holding in State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001), to support his argument. The State contends that there was ample evidence presented at trial to corroborate the witnesses' testimony. Our supreme court stated the requirement for corroborative evidence in State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994):

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent

corroborative testimony must also include some fact establishing the defendant's identity.

State v. Bigbee, 885 S.W.2d at 803.

We agree with the defendant that State v. Shaw is controlling in that a conviction cannot stand based on the uncorroborated testimony of an accomplice. However, we conclude that there was ample corroborating evidence at trial including the defendant's own statement to police that he had a .380 caliber semi-automatic pistol at the scene of the shooting and that he was at the scene with two other men. A witness who testified that he saw three people chasing and shooting at Christopher Williams specifically identified the defendant as one of the three men. There was forensic evidence that three guns were fired, including a .380 caliber weapon, which further corroborated the testimony of the witness implicating the defendant in the shooting. We conclude that the jury properly considered the corroborated testimony of the witness.

III. Failure to Disclose Discovery

The defendant argues that the trial court should have granted him a new trial based on his allegation that the State failed to disclose that they told witness Sallie that they would take his testimony against the defendant into consideration regarding his pending charges. In support of his argument, the defendant cites State v. Bolden, 979 S.W.2d 587 (Tenn. 1998), and State v. Boxley, 76 S.W.3d 381 (Tenn. Crim. App. 2001), to show that he was entitled to have full disclosure of any agreement between the prosecution and a witness. However, he fails to provide any proof that an agreement existed between the witness and the State. He simply argues that the charges against the witness were dropped after he testified against the defendant.

In order to establish that a due process violation has occurred under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), four prerequisites must be met: (1) The defendant must have requested the information; (2) The State must have suppressed the information; (3) The information must have been favorable to the accused; and (4) The information must be material. See State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995). The State contends that no agreement was ever made with the witness. They maintain that, had an agreement been made with the witness, they would have disclosed that information to the defense.

The defendant argues that he was denied effective cross-examination of the witness. The State contends that the defendant was not denied effective cross-examination of witness Sallie because he was questioned extensively at trial regarding both his reason for testifying and the reasons his bond was lowered from $500,000 to $25,000. The witness was questioned at trial regarding his expectation of consideration by the State as to his pending charges to which he answered he had no expectation of any favorable treatment by the Sate in exchange for his testimony. The defendant proffers no proof that there was an agreement regarding favorable treatment in exchange for favorable testimony for the State. The defendant quite simply has not shown that the State failed to disclose that they had an agreement with the witness in exchange for his testimony. Further, he has

failed to establish a due process violation under the standard of <u>Brady v. Maryland</u>.  We affirm the decision of the trial court in denying the defendant's motion for new trial.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____

JOHN EVERETT WILLIAMS, JUDGE